IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **MATTHEW B. JOB,** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-676** |
| | ) | |
| **SIMPLY WIRELESS, INC.,** *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

At issue on defendants' motion to dismiss for failure to state a claim in this diversity breach of contract case are two primary questions: (i) whether the suit is barred by Virginia's five-year statute of limitations for actions on a written contract, which in turn depends on whether the contract obligations are divisible or indivisible and (ii) if not, whether plaintiffs have pled facts sufficient under Virginia law to state a claim that the corporate veil should be pierced as to the obligor's affiliated corporation. With respect to the statute of limitations question, defendants' motion to dismiss presents an important threshold issue seemingly unaddressed by the caselaw, namely whether parties may rely on unenforceable provisions of a contract in order to establish the parties' intent that the contract should be indivisible for statute of limitations purposes.

The matter was fully briefed and argued on several occasions. Specifically, defendants' initial motion to dismiss prompted an additional round of supplemental briefing and a second oral argument on the question of the divisibility of the underlying contract. Thereafter, it was determined that plaintiffs' Complaint would be dismissed for failure to state a claim, with plaintiffs given leave to file an Amended Complaint. The Amended Complaint, in turn, prompted a renewed motion to dismiss. After argument on defendants' renewed motion to dismiss was

heard, a bench ruling and order issued denying the motion. This memorandum opinion elucidates and records the reasons for that ruling.

## I.

The relevant facts are straightforward and may be succinctly stated.[1] On January 16, 2008, plaintiffs Matthew and Cynthia Job entered into a contract with defendant Simply Wireless, Inc. ("Simply Wireless") for the sale of one hundred percent of all stock in Carolina Cellular Sales, Inc. ("Carolina Cellular"). *See* Am. Comp., Ex. 1.[2] Under the terms of the contract, Simply Wireless was to pay a total purchase price of $1,500,000 according to an agreed installment schedule. *See* §§ 1(a)-(e). Specifically, (i) $25,000 was due upon the ratification of the agreement, (ii) $25,000 was due on the last day of each month beginning in February 2008 and ending in November 2010, and (iii) $625,000, plus any interest owed, was due on or before December 31, 2010. Also included in the contract was a requirement that Simply Wireless pay off a promissory note owed by plaintiffs and held by Bank of America.

Simply Wireless paid the initial $25,000 due at ratification, but thereafter failed to make the required payments in a complete and timely fashion. Indeed, plaintiffs allege that a material breach of the contract occurred in 2008, when Simply Wireless failed to make a timely payment of the February 2008 installment. *See* Am. Comp. ¶ 28. Over the course of 2008, Simply Wireless paid only $205,000 of the $275,000 due for the year. *Id.* Subsequent years were no better; Simply Wireless paid only $40,000 total in 2009 and paid nothing at all in 2010. *Id.* With

---

[1] For purposes of addressing defendants' motion under Rule 12(b)(6), Fed. R. Civ. P., the facts set forth in the Amended Complaint must be assumed to be true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

[2] Exhibit 1 to the Amended Complaint is a copy of the contract in issue. Subsequent citations to the contract will refer only to the relevant sections of the contract.

the exception of a single $10,000 payment in 2011, no additional payments were made until

2014, well after the December 31, 2010 date by which all obligations under the contract should

have ended. Moreover, several of the payments made under the contract were not paid by Simply

Wireless but by defendant Mobile Now, Inc. ("Mobile Now"),[3] a corporate affiliate of Simply

Wireless under common ownership. Altogether, defendants Simply Wireless and Mobile Now

have paid only $301,500 under the contract.

Significantly, the contract reflects that the parties made clear their intention as to the

consequences of an uncured breach of the installment payment schedule. In that regard, § 1(g) of

the contract provides, in relevant part:

> The parties agree that if a default continues past forty five (45) days from
> the initial default, then Job will immediately receive all rights, title and interest to
> Carolina Cellular and Simply Wireless. Immediately at that time, the then
> shareholders, officers and directors of Carolina Cellular and Simply Wireless
> shall have no rights or continuing duties (other than to fully cooperate with Job
> receiving this interest).

The contract further defines a "default" as "a payment...late more than five (5) business days."

§ 1(f).

Plaintiffs' Amended Complaint alleges thirteen distinct breaches of the contract: (i) ten

distinct failures to make full and timely payments under the installment payment schedule, (ii)

the failure to pay the accumulated late fees associated with the untimely installment payments,

(iii) the failure to pay the interest due on the balance of the purchase price, and (iv) the failure to

pay off a promissory note owed by plaintiffs to Bank of America. For these breaches, plaintiffs

seek damages against Simply Wireless, the buyer, and Simply Wireless's affiliate, Mobile Now,

---

[3] Plaintiffs allege alternatively that Mobile Now assumed the duty to perform under the contract
or that Mobile Now is being used to commit an injustice, in that plaintiffs allege that Simply
Wireless's owners stripped Simply Wireless of its assets and moved them to Mobile Now so that
Simply Wireless would be judgment proof.

on the basis that Mobile Now is the successor to the obligations under the contract and that the

corporate veil between Simply Wireless and Mobile Now should be pierced. Defendants argue

that (i) the breach of contract claims are time barred, (ii) plaintiffs have failed to allege facts

sufficient to state a claim for damages stemming from the failure to pay the promissory note, (iii)

plaintiffs have failed to allege facts sufficient to state a claim against Mobile Now as a successor

to the contract, and (iv) plaintiffs have failed to allege facts sufficient to pierce the corporate veil

as to Mobile Now.

## II.

Defendants primarily seek dismissal of the Amended Complaint on the ground that

Virginia's five-year statute of limitations for actions on a written contract signed by the party to

be charged bars the action. *See* Va. Code § 8.01-246(2).[4] The threshold question in the statute of

limitations analysis is whether the contract obligations are divisible or indivisible. If divisible,

then the only claims barred by the statute of limitations are those resulting from breaches that

occurred more than five years before the date of the filing of the suit, May 27, 2015. If the

contract obligations are indivisible, then all claims under the contract are barred, as the five-year

statute of limitations began running in 2008 at the time the first material, uncured breach

occurred. *See Jones v. Morris Plan Bank*, 168 Va. 284, 290 (1937). Yet, the parties agree that the

contract obligations are indivisible, if at all, only by operation of § 1(g), the provision that

governs the consequences of an uncured default. This raises a further question in the statute of

limitations analysis, namely whether § 1(g) is a valid and enforceable provision and therefore a

basis from which to infer the parties' intent as to indivisibility. And, if § 1(g) is invalid and

---

[4] The parties correctly do not dispute the application of Virginia law, inasmuch as the contract
provides that the "agreement shall be governed by and construed according to the laws of the
Commonwealth of Virginia." § 7(b).

unenforceable, a further question presents itself, namely whether § 1(g) can be an unenforceable penalty but still provide a basis for inferring the parties' intent on the divisibility or indivisibility of the contract.

Whether a contract's obligations are divisible or indivisible for statute of limitations purposes is a matter of contract interpretation in which the task is to discern "the intention of the parties as expressed by them in the words they have used." *W. F. Magann Corp. v. Va.-Car. Elec. Works*, 203 Va. 259, 264 (1962). Moreover, "courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* Accordingly, Virginia law "will not insert by construction, for the benefit of a party, an exception or condition which the parties omitted from their contract by design or neglect." *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407 (1995). Furthermore, in construing contracts "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 271 Va. 574, 578 (2006). And, in this respect, it is axiomatic that "[w]ords that the parties used are normally given their usual, ordinary, and popular meaning." *D.C. McClain, Inc. v. Arlington Cnty.*, 249 Va. 131, 135 (1995).

Under Virginia law, the general rule is well settled that "contracts for installment payments are divisible, thereby permitting separate actions to be maintained to recover installment payments as they fall due." *Ten Braak v. Waffle Shops, Inc.*, 542 F.2d 919, 924 n.6 (4th Cir. 1976) (citing *Jones*, 168 Va. 284). But this general rule can be overcome if the parties' contract terms reflect the intent that the contract is indivisible. For example, an acceleration clause in an installment contract generally manifests the contracting parties' intent that the contract is indivisible. *See Jones*, 168 Va. at 291. Sections 1(a)-(e) of the contract set forth an

5

installment payment schedule, which in the first instance suggests that the contract is an installment contract and, therefore, divisible. The next question is whether the contract here contains a provision that overcomes this general divisibility rule.

The principles of Virginia contract law, applied here, point convincingly to the conclusion that § 1(g) of the contract, if valid and enforceable, renders the obligations indivisible. By its terms, § 1(g) creates a mandatory and automatic set of obligations that, if triggered, fully replace the installment payment obligations under §§ 1(a)-(e). That § 1(g) is mandatory and automatic follows from the provision's plain language, which mandates that in the event of an uncured default (i) plaintiffs "will immediately" receive rights and title to Simply Wireless and Carolina Cellular and (ii) the then-existing shareholders, officers, and directors of Simply Wireless and Carolina Cellular "[i]mmediately...shall" lose their rights and duties. *Accord Snyder v. Exum*, 227 Va. 373, 377 (1984) (observing that "shall" is "clear and unequivocal" mandatory language).

Nor is there any doubt that § 1(g), by its terms, ends Simply Wireless's obligations under the installment payment schedule and replaces those payment obligations with the obligation to transfer Simply Wireless and Carolina Cellular to plaintiffs. At its core, § 1(g) is a mechanism to ensure that, in the event of an uncured default under the installment payment schedule, plaintiffs receive *something* of value, namely Simply Wireless and Carolina Cellular. Moreover, if title to Simply Wireless passes to plaintiffs, as § 1(g) requires, then the installment payment schedule ends. Indeed, § 1(g) provides that, once triggered, Simply Wireless's "officers and directors...shall have no...continuing duties," which relieves the officers of their duty to act on behalf of the corporation to ensure that timely payments are made in Simply Wireless's name under the installment payment schedule. A contrary reading of the contract leads to the absurd

6

result that plaintiffs, as owners of Simply Wireless, would have to make payments to themselves, a result that cannot be taken seriously. *Accord Transit Cas. Co. v. Hartman's, Inc.*, 218 Va. 703, 708 (1978) ("absurd results are to be avoided" when construing contracts). In short, the reasonable reading is that the mandatory and automatic language of § 1(g) replaces the obligations under the installment payment schedule altogether. Thus, § 1(g), once triggered, automatically replaces the installment payment schedule with alternative and mandatory obligations, namely that Simply Wireless transfer all interest in Simply Wireless and Carolina Cellular to plaintiffs. This distinct set of obligations is clearly indivisible and manifests an intent that, in the event of a breach, the parties would prefer to replace the ongoing, divisible obligations under the installment payment schedule with the indivisible obligation under § 1(g).

The question then becomes whether § 1(g) is enforceable and thus a valid basis for inferring the parties' intent. It is not; § 1(g) is an unenforceable penalty and cannot be given effect even with respect to the intent of the parties as to indivisibility.

As the Supreme Court of Virginia has explained, parties to a contract may agree in advance about the remedy resulting from a breach, including damages, but only when (i) the actual damages contemplated at the time of the agreement are uncertain and difficult to determine with exactness *and* (ii) the amount fixed is not disproportionate to the probable loss.[5] *See O'Brian v. Langley School*, 256 Va. 547, 551 (1998). If these conditions are not met, then the provision "will be construed as an unenforceable penalty." *Id.* Here, there is little or no basis to suggest that the actual damages contemplated at the time of the agreement were uncertain;

---

[5] Although § 1(g) is not a pure liquidated damages clause in that it does not mandate the payment of a set sum of money, the central logic of the Virginia liquidated damages cases—that penalty provisions are against Virginia public policy—applies with equal force where, as here, an elected remedy has the capacity to be coercive.

rather, it is clear that the damages at the time of a breach are the amount due and payable under the contract. *See Taylor v. Sanders*, 233 Va. 73, 75 (1987) ("failure to pay a sum of money" is "susceptible of definite measurement"). Moreover, the remedy under § 1(g) is entirely disproportionate to the probable loss because under the terms of § 1(g) a material uncured breach (i) causes Carolina Cellular to revert to plaintiffs, (ii) causes all interest in Simply Wireless to be forfeited to plaintiffs, and (iii) allows plaintiffs to keep all payments already made. Thus, rather than seek to make plaintiffs whole, § 1(g) seeks to induce compliance with the installment schedule by holding the threat of significant forfeiture over defendants' heads. Accordingly, § 1(g) is an unenforceable penalty under Virginia law.

Although the terms of § 1(g) are not enforceable, this does not end the analysis. The next step of the analysis requires determining whether the *intent of indivisibility* that § 1(g) manifests remains relevant. In other words, the question is whether the contract should continue to be construed as indivisible following a material breach even though the provision manifesting that intent is unenforceable. At its core, deriving an intent of indivisibility from an unenforceable contract provision seems untenable—to derive intent from § 1(g) is to give § 1(g) effect. Yet, no caselaw has been found in Virginia or other jurisdictions that squarely addresses the issue. As such, the task is to predict what approach the Supreme Court of Virginia would take if confronted with this question. Two different areas of contract law—Virginia's approach to covenants not to compete and the federal courts' application of common law in the field of arbitration clauses—provide imperfect but instructive analogies that point persuasively to an answer, namely that § 1(g), as an unenforceable penalty, cannot speak to the parties' intent.

The first useful, albeit imperfect, analogy can be made to Virginia's law regarding covenants not to compete. Like penalty clauses, Virginia law treats "overbroad" covenants not to

compete as "unenforceable." *See, e.g., Omniplex World Servs. Corp. v. U.S. Investigations Servs., Inc.*, 270 Va. 246, 250 (2005). Moreover, although it does not appear that the Supreme Court of Virginia has expressly held as much, the prevailing view is that Virginia adheres to an "all-or-nothing rule" that holds overbroad covenants not to compete unenforceable in whole. *See, e.g., Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 2009 WL 7388870, at *9 (Fairfax Cir. Ct. 2009) (collecting authority). Although the *intent* of an overbroad covenant not to compete is clear— preventing competition—Virginia courts refuse to "blue pencil," or rewrite, such clauses so as to make them reasonable and enforceable. *See id.* Thus, when the covenant is unenforceable, Virginia courts essentially disregard the underlying intent when they reject pleas to redraft, or blue pencil, the covenant into an enforceable one or to enforce the terms of a facially overbroad covenant in circumstances in which it would be reasonable to do so. *See Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006) ("[T]he clause fails even though it may be reasonable as applied to the specific circumstances presented."). Because penalty clauses are similarly unenforceable, it is reasonable to conclude that the Supreme Court of Virginia would treat such clauses similarly to overbroad covenants not to compete. As the substantial weight of lower court authority holds, this requires that the unenforceable provision be entirely excised from the contract, such that the underlying intent is not afforded any weight. As such, because § 1(g) is an unenforceable penalty clause its manifestation of an intent that the contract is indivisible should be disregarded.

But even assuming the foregoing analysis is incorrect, another helpful, although imperfect, analogy reinforces the conclusion reached here that § 1(g) should not be understood to require indivisibility despite its unenforceability. Under the Federal Arbitration Act, federal courts can appoint substitute arbitrators when arbitration in an agreed forum is not possible. *See*

9 U.S.C. § 5. Yet, a widely accepted principle in this context holds that "a district court may not appoint substitute arbitrators and compel arbitration" when the chosen forum is "an integral part of the agreement to arbitrate, rather than an ancillary logistical concern." *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 491 n.7 (5th Cir. 2012) (internal quotation marks and citation omitted).[6] In other words, courts recognize that the presumptive default for resolving disputes is litigation in court; and thus, where parties to a contract agree to deviate from the default by availing themselves of arbitration but only, for instance, before a specific arbitrator, the unavailability of that specific arbitrator does not trigger the appointment of a substitute arbitrator if the limited deviation was central to the agreement to arbitrate. This is so because, as the federal courts widely recognize, an intent to arbitrate in a *specific* forum does not necessarily manifest an intent to prefer arbitration over litigation in all circumstances.

A similar principle is at play here. The parties' intent that the underlying contract is indivisible is manifested in a highly specific provision, namely § 1(g). That the parties were content with indivisibility through the application of this specific provision does not necessarily manifest a generally applicable intent of indivisibility in all circumstances. Indeed, there is no reason why the parties here—or any parties to any contract—could not include generally applicable language rendering their contract indivisible in all circumstances if that is what they desired. The parties did not do so here. Rather, where, as here, there is a well-known general rule (*i.e.*, the divisibility of installment contracts) and the parties elect to deviate from that general rule through the application of a highly specific provision, that election should not be

---

[6] *Accord Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1350-51 (11th Cir. 2014); *Khan v. Dell, Inc.*, 669 F.3d 350, 353-54, 358 (3d Cir. 2012); *Reddam v. KPMG, LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006); *In re Salomon Inc. Shareholders' Derivative Litig.*, 68 F.3d 554, 561 (2d Cir. 1995).

understood, standing alone, to manifest an intent to deviate from the general rule in every

instance. *Cf. id.* And, as noted, this principle is not foreign to the common law of contracts, as a

similar line of reasoning has been widely endorsed in the arbitration context. Thus, even

assuming § 1(g) manifests an intent despite its unenforceability, there is no reason to conclude

that § 1(g) manifests an intent that the parties always prefer indivisibility as opposed to

indivisibility only when § 1(g) is valid and enforceable.[7]

In an attempt to avoid the conclusion that the contract is divisible, defendants argue that

the penalty clause argument is an affirmative defense that only defendants can raise. As such,

defendants argue that plaintiffs cannot attack § 1(g) as a penalty in order to render the contract

obligations divisible because such an argument is solely within the province of defendants. This

argument is unpersuasive. Although penalty clause objections are most likely to arise in the

posture of an affirmative defense, the Supreme Court of Virginia speaks of penalty clauses as

"unenforceable" in absolute terms rather than only at the election of the burdened party. *See, e.g.,*

*O'Brian,* 256 Va. at 551 (noting that "a party," as opposed only to "a defendant," can challenge

the validity of a liquidated damages clause). Similarly, defendants' alternative argument that it is

inequitable to disregard an intent embodied in contract language that plaintiffs drafted is of no

moment; an invalid penalty provision is an invalid penalty provision, and there is no legal

---

[7] The conclusion reached here that indivisibility was not so central to the parties' agreement as to
require inferring indivisibility even in the absence of § 1(g)'s validity and enforceability finds
much support in the facts of the parties' interactions. It must be remembered that when the initial
uncured breach occurred, neither party sought to enforce § 1(g). To the contrary, after the initial
uncured breach defendants continued to make sporadic and incomplete installment payments,
which plaintiffs continued to accept. Thus, it does not appear that § 1(g) was central to the
parties' agreement *at all*, which underscores why, in this case, it is inappropriate to use § 1(g) as
a basis for inferring an absolute intent regarding the indivisibility of the contract obligations
upon default.

authority to support the proposition that there is an "equitable" exception to Virginia's rejection of penalty clauses.[8]

Defendants further argue that to the extent that § 1(g) is a penalty, the appropriate remedy would be to cut from § 1(g) the language that causes all interest in Simply Wireless to forfeit to plaintiffs and to leave the remainder intact such that there is still an enforceable intent of indivisibility. Indeed, defendants argue that § 7(a) of the contract—which provides that if any "parts of sections" of the contract are "held to be invalid for any reason whatsoever" then that part of a section "shall be void"—contemplates the power of a court to reform sections of the contract when only parts of the section are problematic.

This argument fails for at least two reasons. First, § 7(a) does not by its plain language suggest that a court should rewrite the contract's provisions to salvage as much as possible. To the contrary, § 7(a) merely recognizes that it might be true that only part of a section of the contract will be invalid. Here, however, the Simply Wireless forfeiture portion of § 1(g) is not an invalid part of a valid section; rather, this is a portion of the section that renders the *entire section* invalid. That is, the Simply Wireless forfeiture portion of § 1(g) is invalid because it is part of the whole of § 1(g), which is invalid as a whole. Moreover, given the conclusion that § 7(a) does not empower a court to rewrite § 1(g), it must be noted that by reliance on the same analogy to covenants not to compete discussed *supra*, there is good reason to believe that the Supreme Court of Virginia would reject the notion that it could rewrite unenforceable penalty clauses in order to save such clauses from invalidity.

---

[8] Defendants' suggestion that the doctrine of *contra proferentum* applies in this context is similarly unavailing. That doctrine merely instructs that ambiguities in a contract should be construed against the drafting party; it does not speak to the drawing of inferences or conclusions about intent from unambiguous language. *See Colonna's Shipyard, Inc. v. United States*, No. 14-cv-331, 2015 WL 9008222, at *11 (E.D. Va. Dec. 14, 2015) (describing the doctrine).

Second, even assuming that Virginia courts could properly exercise the power to revise penalty clause language, excising the portion of § 1(g) requiring the interest in Simply Wireless to forfeit to plaintiffs would not save the clause for two reasons: (i) the measure of actual damages was certain at the time of contracting and (ii) § 1(g) remains disproportionate because it continues to allow plaintiffs to retain all previous installment payments made in addition to regaining ownership of Carolina Cellular. In other words, under the terms of § 1(g) the plaintiffs receive the interest sold *and* the payments made therefor, which clearly shows that § 1(g) provides for disproportionate recovery. As such, even by defendants' own argument that § 1(g) can be saved (an argument that can be rejected based solely on the fact that the measure of damages was certain at the time of contracting), § 1(g) can be saved only by inserting additional language, specifically language that requires plaintiffs to return payments received in exchange for the value of Carolina Cellular. Yet, Virginia law is clear that courts "will not insert by construction...an exception or condition which the parties omitted from their contract by design or neglect." *Bridgestone/Firestone, Inc.*, 250 Va. at 407.

For the foregoing reasons, the contract at issue is an installment contract and is therefore divisible as a general rule. Although § 1(g) manifests an intent that the contract be indivisible upon the occurrence of an uncured breach, § 1(g) is an unenforceable penalty clause and therefore cannot be given effect, even as the basis of an inference of the parties' intent of indivisibility. Moreover, there is no reason to conclude that § 1(g) manifests an intent that the contract is indivisible in all circumstances as opposed to only when § 1(g) is enforced according to its terms. Accordingly, the contract is divisible and each failure to pay according to the installment schedule is individually actionable. Because plaintiffs filed the instant action on May 27, 2015, the statute of limitations bars only payments that came due on or before May 27, 2010.

13

It follows that the first two breached installment payments that plaintiffs allege, which came due on March 31, 2010, and April 30, 2010, are barred by the statute of limitations. Am. Comp. ¶¶ 31, 35. But the remaining installment payments due under the installment payment schedule,[9] the late fees due thereupon, the interest due on December 31, 2010, and the failure to pay off the line of credit with Bank of America by December 31, 2010, are not barred.[10]

### III.

Plaintiffs allege that Mobile Now, which was not a party to the contract, is liable as the successor to Simply Wireless's obligations under the contract. Specifically, plaintiffs allege that (i) Mobile Now assumed a duty of payment, Am. Comp. ¶ 16, and thereafter made eight payments totaling $56,500, *id.* ¶ 28. Taken as true for purposes of the motion to dismiss, these allegations support a plausible inference of successor liability. *Cf. T. v. T.*, 216 Va. 867, 872 (1976) (a court of equity can enforce an oral contract where (i) the agreement is certain and definite and (ii) past performance has been so extensive that non-enforcement would operate as a fraud). Even if successor liability does not ultimately exist on the merits, plaintiffs have met the bar for plausibility of the claim at this threshold stage such that discovery is warranted.

---

[9] All remaining dates of performance came on or after May 31, 2010.

[10] Defendants contend that the alleged failure to pay off the Bank of America line of credit does not state a claim because plaintiffs have not alleged damages with particularity, but there is no requirement to plead precise damages. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5 (2007) (pleadings must state a basis for "plausible liability"). If discovery produces no basis for any damages stemming from the breach, then defendants will have a valid argument on the merits, but at the motion to dismiss stage the general allegation that plaintiffs have suffered damage is sufficient for the claim to survive. At oral argument plaintiffs suggested that the damage suffered from defendants' failure to pay off the loan was injury to plaintiffs' credit. Although it seems unlikely that an injury of this sort is cognizable in contract, that is an issue for the merits stage.

In the alternative, plaintiffs seek to pierce the corporate veil in order to hold Mobile Now liable for Simply Wireless's breach.[11] Under Virginia law it is well settled that "to ignore the separate existence of a corporate entity…is an extraordinary act to be taken only when necessary to promote justice." *C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 10 (2003). Although there is "no single rule or criterion…to determine whether piercing the corporate veil is justified," it is clear that piercing the corporate veil requires both (i) that there be a unity of interest and ownership such that the separate personalities of the corporations no longer exist and (ii) that the entity sought to be held liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. *Id.* The decision to pierce a corporate veil is always "fact-specific." *Id.*

Here, plaintiffs allege (i) a unity of ownership and interest between the corporate defendants, Am. Comp. ¶ 87, (ii) that Simply Wireless was intentionally undercapitalized in order to discourage creditors such as plaintiffs from taking legal action to collect debts, *id.* ¶¶ 88, 90, 91, and (iii) that Simply Wireless and Mobile Now comingle assets contrary to corporate formalities, *id.* ¶ 89. In short, plaintiffs allege that assets from Simply Wireless were moved into Mobile Now for the purpose of rendering Simply Wireless judgment proof as to creditors such as plaintiffs. If the allegations are true, this type of exploitation of the corporate form may well warrant piercing the corporate veil. *See C.F. Trust, Inc.*, 266 Va. at 12 ("commit[ting] an injustice" and "gain[ing] an unfair advantage" permit piercing the corporate veil).

Defendants argue that there is no basis upon which to find that Mobile Now dominates Simply Wireless so as to justify piercing the corporate veil. This argument fails for at least two

---

[11] Although plaintiffs allege piercing the corporate veil as a cause of action, as a doctrinal matter it is actually a remedy. *See C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 12 (2003).

reasons. First, and most fundamentally, this is an argument about a question of fact that can only be resolved on the basis of a full record. Second, it might be the case that Simply Wireless dominated Mobile Now, and Mobile Now can be held liable under "reverse" veil piercing or some other veil piercing theory.[12]

Defendants further protest that plaintiffs fail to plead any fraud with particularity so as to warrant piercing the corporate veil. Although fraud is one factual situation that can justify piercing the corporate veil, the Supreme Court of Virginia has made it clear that other acts of "injustice" or attempts "to gain an unfair advantage" may also warrant veil piercing. *Id.* Here, abuse of the corporate form to evade contractual obligations has been alleged, and, if true, such an allegation may well support a decision to pierce the corporate veil.

## IV.

For the foregoing reasons, the contract's obligations are divisible. Thus, some but not all of the breaches alleged in the Amended Complaint are barred by the statute of limitations. Moreover, the Amended Complaint pleads sufficient facts to state a claim for relief on an action for breach of contract as against Simply Wireless and Mobile Now. Accordingly, defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., must be denied.

An appropriate order has already issued.

Alexandria, Virginia
December 22, 2015

T. S. Ellis, III
United States District Judge

---

[12] *See C.F. Trust,* 266 Va. at 10 ("In a reverse piercing action...the claimant seeks to reach the assets of a corporation or some other business entity...to satisfy claims or a judgment obtained against a corporate insider.").